Today's cases will be called as previously announced, and the times will be as allotted to counsel. The first case today is No. 241881 and 241882, United States v. Marcus Mello. Will counsel for appellant please come up and introduce yourself on the record to begin? Yes, good morning. Marie Theriot on behalf of Marcus Mello, the appellant. Your Honor, may I please have three minutes of rebuttal time? You may. Thank you. Marcus Mello was charged with these offenses when he was 22 years old. In the end, he was sentenced to over 15 years in prison with no adult criminal history. The first error that I'd like to focus on is the drug quantity calculation, which was unreliable, unreasonable, and miscalculated. This is a procedural error and a significant error because this determined Mr. Mello's base offense level in this case, which would have been a 30 as opposed to a level 32. A majority of the fake oxys in this case, approximately 11,000 pills, were never seized, never tested, never weighed because they were what we refer to as relevant conduct. A reasonable estimate in this case would have been under 3,000 kilograms. I believe the estimate that the district court relied upon was 3,022.96 kilograms. Now, even the pre-sentence report acknowledged the difficulty and the imprecise methodology to come up with a weight in a situation, for example, where as here, the primary evidence demonstrating these 11,000 pills amounted to two FedEx receipts, deliveries. Excuse me, counsel. Is your argument going to be that it's unreliable in general, or are you specifically identifying the delta as the personal use issue? Both, I would like to argue, if I may. So I think a reasonable, I think the lower court committed error by not finding that a more reasonable estimate would have been under 3,000 kilograms of converted drug weight in this case. The only visual exhibit we had was a photograph of allegedly 5,000 pills, which impossible to count from this photograph, impossible to determine if they were even real, if they were counterfeit, et cetera. And I submit to this court that the more reasonable, equitable calculation would have been under 3,000, leaving a base offense level of 30, in this case, not 32. And is that because you want us to disregard the 11,000 referred to in the emails and the  No, Your Honor. So if we don't disregard that, how do we find clear error? Because Your Honor, first of all, the state's exhibits, the different WhatsApp texts, the one photograph of the 5,000 pills, it really is impossible to determine if they were really 5,000 pills. And in the WhatsApp exchanges, it was not crystal clear that in fact 5,000 pills were in that bag. But the test isn't crystal clarity, is it? No, Your Honor. It is a reasonable estimate, and the lower court must err on the side of caution. The lower court must make a proper judgment regarding the veracity and the reliability of this circumstantial evidence in determining quality. And I submit that the lower court failed to make a conservative estimate in the defendant's favor. I guess what I'm, how do we put together ordinary clear error review, which is, I think, as Brad is asking you, given what's in the record, to say it was clearly erroneous to make the  But then you say we've got this language about you're supposed to make a conservative estimate. How does that relate to ordinary clear error review? Is the idea that we ask, was it clearly erroneous to conclude that that's a conservative estimate? In part, yes. At one point, the And what, I don't, it's just hard to know what it means to have a conservative estimate as opposed to an estimate. Well, I believe case law that I have referred to in my brief talks about the fact that when we don't have a certain way, we don't have this evidence to weigh, we don't have this evidence to test. And at one point, the lower court indicated, well, Mr. Mello has not presented any evidence that would bring the weight to under 3,000 kilograms. Well, we don't have the evidence. It's relevant conduct. We don't have the physical evidence. So in light of that, I think, out of an abundance of caution and under the guidelines of fundamental fairness, that the estimate should have been under 3,000 kilograms. And if I may, if I may, Your Honor, briefly, Your Honors, briefly touch base on a couple of other issues. Well, why don't you do the, just go ahead and we can stop you when we, you've got about a minute left before. Thank you. The second error that I would like to focus on is the fact that the lower court denied Mr. Mello a two-level decrease for acceptance of responsibility based solely upon the fact that he did not appear for his trial. He, his base offense level was enhanced for obstruction of justice based upon that fact. And the lower court failed to weigh the factors in determining whether or not they should grant an acceptance of responsibility credit. The lower court failed to consider three years of pretrial rehabilitation that Mr. Mello was very successful with. And also, there were extraordinary reasons in this case to grant acceptance of responsibility, regardless of the obstruction. Thank you. You have rebuttals. Any other further questions? If I may rest on my briefs. Thank you, Your Honors. You have rebuttal time.  Thank you. Thank you, Counsel. Will the attorney for the athlete please come up and introduce yourself on the record to begin? Yes. Good morning. May it please the Court. Brian Klein, Board for the United States. Your Honors, with respect to the district court's drug quantity determination, as has been discussed, this court's review is for clear error. The court's role is not to see whether there is any view of the evidence that might undercut the district court's finding, but rather to determine whether there is any evidence in the record to support the finding. I would point to at least five points here about the drug quantity determination that support the district court's finding. That is that there was a single source for all of the drugs that Mr. Mello possessed. He got them all from this dealer, CHOP, that he had the messages exchanged with. It was all during a very short period of time between roughly March of 2020 and July of 2020. All of the pills, all of the blue pills that were attributed to be fentanyl and that were tested and determined to be fentanyl had the same appearance. And that's contrasted from other pills that were recovered from Mr. Mello's backpack when he was arrested that were different in appearance, that were white, that were separately packaged, that were oxycodone. And I think the court can infer that those pills, to the extent that there was any personal use by Mr. Mello, that it was those pills and not all of the blue fentanyl pills that were packaged separately. Just so I follow, with respect to the blue pills, all the blue pills that were tested turned out to be fentanyl? That's correct, Your Honor. And is there any evidence that indicates that any of those blue pills would have been fake? No. In the 11,000 that's discussed, do we know those all look like the blue pills that were tested that are fentanyl? Yes. In addition to the messages between Mello and Chopp, there were photographs of those pills that were exchanged. They are one of the government sentencing exhibits. They also appear to be the same blue pills that were recovered from Mr. Mello, that were sold to the CI, and that were also recovered from the decedent who died from the fatal overdose. So is your implicit view that the argument for the quantity being too high from your opponent is premised on some of those blue pills having to be fake? Yes. I think that's their argument, and there's no evidence to support that. Well, they have an alternative argument that some of the pills, in addition to the ones found on them, were for personal use. Yes, Your Honor. And that, again, was a fact-bound question and determination that the district court made, that Mr. Mello's own statements failed to support that, that he had stopped using, in his own words, any drugs, whether opiates or Percocets with fentanyl, at the time that he was selling the drugs, between May and May to July of 2020. But didn't the government admit him to a rehab program? Perhaps, but I don't know when that was in relation to... That doesn't sound like someone who stopped using. Well, he certainly was a user at some point in time, but I think what the court found here was that, based on his own words, he wasn't using during the time frame that he was dealing these drugs. And also, again, I think the court could infer that if he was using, it wasn't the blue pills that he had reason to know were fentanyl and had caused an overdose death, but rather the separately packaged white pills that tested to be oxycodone. And for the weight to get over the 3,000 threshold, which is what you needed to be for the sentence... Yes. Calculation to be correct, do we know how many pills there need to be to get over that weight? How many pills need to be tested, or how many... There's a certain amount of weight. Right. Yes. And there's a mathematical conversion that the... And what's the downs... In other words, to get over 3,000, how many pills would there have to be? I don't know. Are we just over it or way over it with 11,000? I think we were fairly well over it, Your Honor. And I think the court initially... Wasn't it just 3,027? Yes. Initially, the determination was, I think, 3,100 or 3,200. But that was recanted. There was a mathematical error in that. And so then it was reduced to... I think you're right, Judge Kayotte. I think it was 3,000 and change. And the change is how many pills. In other words... Would the 11,000 have done it? That's what I'm trying to get at. And then if the 11,000 would have done it, how many less... How many could you subtract from that before you'd be under 3,000? I don't know, Your Honor, because it's a math... To get to the converted drug weight... And this was not something that was objected to. That math determination was not something that was ever objected to. I think... I'm not disputing that... The calculation is based on what? The 11,000 pills? Yes. Some number less than that? Or all 11,000? I think all the 11,000. Right. So I'm not disputing that if you take all 11,000 pills, you get to the weight that's over 3,000. But to the extent the argument is, how do we know all of those pills should have been counted? It would seem... Two possibilities. One is you're saying every single pill had to be counted and there's no reason not to count any of them. Another is even if you didn't count some, it wouldn't possibly be enough to bring you under 3,000. It sounds like you're only making the first argument, not the second. No. Well, I think I'm making the argument, Your Honor, that the law is that courts may extrapolate from... Not all the pills need to be tested in order to establish... I understand that. To establish that they are all fentanyl. All fentanyl. Right. And I'm just asking, is the government's position that your contention is it was not clear error to conclude that all 11,000 were fentanyl? Or is your contention that even if all 11,000 weren't fentanyl, we're still over 3,000 because there's nothing in the record to suggest that the number that weren't fentanyl is high enough to bring us under 3,000? Yes. I understand the court's question now, thank you. Our argument is both. Okay. So as to the second one, I guess I'm a little lost what the basis for it would be if you don't know how many pills less than 11,000 there could be and still be over 3,000. Do you see what I'm saying? Yeah, I think the strongest argument on that point, Your Honor, is that there is no evidence at all in the record that any of the 11,000 pills are not fentanyl.  Are you saying the 11,000 by themselves without the blue pills, without the 400 blue pills was enough to put over the... No, I would count also the 400 that were recovered in his backpack. We're talking then about three categories of pills. The ones found on him, the 10 white pills? Found in his backpack were some 417, I think, blue pills plus the white ones that were not fentanyl. So we have the white, we have the blue, and then we have the correspondence and delivery documents suggesting 11,000 other pills that we don't have physical evidence of. Correct. And those 11,000 were not enough to get over the 30 kilogram by themselves. They needed some of the 400. That may be so, but either way, all of the pills recovered, again, all of them were tested to be fentanyl. There's nothing to indicate that the pills were not fentanyl. And does the test result say that 28 were selected and found to contain fentanyl? Or does it say 28 were selected randomly and all 28 were found to contain fentanyl? I think it's the latter. I think 28 were selected and all 28 contained fentanyl. I see that my time is almost up. Just on that last, those 400 that are found on him. Yes. Are necessary to get over the 3,000? I mean, all of that was included in the calculation. Is that a yes? It's the 11,400. Is that a yes? Pardon? Is that a yes? Yes. Okay. And so, is it the case then that for your position to succeed, none of those could have been for personal use? Yes. And the basis for saying that is the testimony that he wasn't using at the time? Correct. But then what's he got the oxycodone for? I'm saying that the court also, the court found, as a matter of fact, that he wasn't using, but also I think the court could infer that to the extent...  I think it's... We have a finding for... There's no finding. I'm saying it's something that the court could have inferred. Okay. But it didn't. If you're relying on a clear error judgment, what was the district court's basis for concluding they weren't for personal use? It was his... It was Mello's statements that he wasn't using. And then what explains why he has the white pills? There's maybe not a lot in the record to establish that, again, other than they were packaged separately and look different from the fentanyl pills. I'm sorry. Now I'm a little confused. Is there any finding that the white pills... I think there were 10, roughly 10. There weren't that many, Your Honor, yes. Was there any finding that those contained fentanyl? No. And part of your argument was that if he was using, it was oxycodone, but you need almost all of those pills to get over 3,000. Not the white oxycodone pills. They were found in his backpack, and they were packaged separately from the blue. I thought the 11,000 gets you just under 3,000. All of the fentanyl pills that were recovered, which is the 11,000, the 417 recovered from his backpack, those are all fentanyl, and those all go to the drug calculation.  So the 417 in the backpack get you over the 3,000. That's the idea? Yes. So the 10 pills sound sort of like orphan pills here. You're saying they weren't included in the calculation of what he was running his business for and selling, but you're also saying he wasn't using at the time. I'm saying it doesn't appear that he was selling those. So what would he have them for? I'm saying we don't know from the record, but I'm just saying to refute the notion that he was using fentanyl, to the extent that he was using something, it's possible that it was those. But we don't have a finding by the district court that that was the logic it was relying on. That's correct, Your Honor. The finding by the district court is he wasn't using at all. That's correct. And what did the district court have to say about the presence of the oxycodone pills then? I don't know that it did make a finding as to that. Thank you, Your Honors. Thank you, counsel. Will attorney for the appellant please come up and reintroduce herself on the record? You have a three-minute rebuttal. Thank you, Your Honors. Marie Terrio on behalf of the appellant, Marcus Mello. Just a quick clarification of the 417 pills. Only 28 were tested. So we have no idea. Well, that's not... We certainly have a pretty good idea of 28 were randomly selected out of the 419 and all of them, lo and behold, tested. That's a pretty high probability that all 419 would have that same characteristic. Possibly, yes, Your Honor. Also, regarding... It's my understanding that the 12, I mean the 10 white oxys weighed 3.8 grams or approximately .38 grams each whereas the fentanyl pills were estimated to weigh .10927 per pill but of those 417 pills, that would be a total weight of 45.6 grams. So of those 417 pills, that's significant to get the calculation over the 3,000. And regarding personal use, we know from the pre-sentence report, excuse me, that Mr. Mello began using oxys and drinking alcohol as young as 13, 14 years of age daily. And that was clear. Secondly, when he was first interviewed by pretrial services, he did not candidly talk about this because he was scared. He was 22 years old. He had never been in the adult system. He then came forward, said, I lied, excuse me, and I lied because I was scared. I have significant substance abuse issues, not to mention all of the torture from the age of two years old and all of his other disabilities. But clearly, there was a grave concern that Mr. Mello be placed pretrial in a dual treatment facility to deal with the mental health issues in addition to the substance abuse issues. And this arbitrary date of March is just an arbitrary date. It's illogical that he would have cold turkey since, you know, he had been using drugs since he was 14, would not have been taking the oxys that were in his backpack when he was arrested in July. How does that help you if the oxys aren't part of the calculation that gets over 3,000? Well, because there was also facts that he was taking both. He was also taking the fake oxys. It's not clear from the record. There's no findings as to when he stopped taking the fake oxys. And then he had these 10 real oxys. That is not clear, and I apologize. I don't have the site right at my fingertips, but it is in the record. Thank you. Thank you. I see my time. I would rest on my brief regarding the obstruction of justice enhancement. That was improper in this case. Yes, I've argued that it is a double punishment based upon the fact that he was charged separately. A consecutive sentence was imposed for the failure to appear at trial. He was denied acceptance of responsibility. I would also ask your honors to look closely at the departure arguments, the overstated. We have all of them. Thank you, your honors. Thank you. I appreciate it. And I ask that you vacate this conviction and remand this case. The sentence. Pardon me? Vacate the sentence. Yes, your honors. Thank you. Thank you. Thank you very much. That concludes arguments in this case.